IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Mikhail Savin,

Petitioner,

v.

David Rivas, Warden, San Luis Regional Detention Center, et al.,

Respondents.

No. CV 26-01120 PHX DWL (CDB)

REPORT AND RECOMMENDATION
A 249 138 621

TO THE HONORABLE DOMINIC W. LANZA:

Petitioner Mikhail Savin, who proceeds pro se, seeks release from detention pursuant to 28 U.S.C. § 2241.

I.      Background

Petitioner is a native and citizen of Russia. (ECF No. 1 at 5; ECF No. 1-1 at 2). Petitioner and his then-pregnant wife applied for admission into the United States on October 20, 2024, from Mexico, using the CBP One application. (ECF No. 1-1 at 33). At the border Petitioner was detained at the Imperial Regional Detention facility and his wife was released from custody (Petitioner's wife, also a citizen of Russia, was presumably paroled into the United States). (ECF No. 1 at 19). Accordingly, Petitioner has been detained for 17 months. Petitioner was served with a Notice to Appear ("NTA"). (ECF No. 1 at 5). Petitioner appeared before an Immigration Judge ("IJ") in California on or about November 7, 2024. (ECF No. 1-1 at 33). At a master calendar hearing on January 31, 2025, at which Petitioner was without counsel, Petitioner admitted charges 1 through 4 of

the NTA and conceded the charge of inadmissibility under Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I), codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I).[1] (ECF No. 1-1 at 2). Based on Petitioner's admissions, the IJ sustained the charge of removability and designated Russia as the country of removal, "if removal became necessary." (ECF No. 1-1 at 2).

Petitioner filed an application for asylum, Form I-589, and also sought withholding of removal and protection pursuant to the Convention Against Torture ("CAT"). (ECF No. 1-1 at 3, 33, 37-38).[2] At a hearing before an IJ conducted April 22, 2025, Petitioner appeared with his counsel. (*Id.*). An issue regarding translation of some documents caused the hearing to be continued, over Petitioner's counsel's objection, to May 27, 2025. (ECF No. 1-1 at 34).

At the hearing on May 27, 2025, the IJ refused to consider an updated Form I-589 and exhibits submitted by Petitioner, including a "notice to the Consular Officer concerning

---

[1] The actual Notice to Appear ("NTA") is not in the record. Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1182, charges as inadmissible an immigrant who, at the time of "seeking admission," is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the INA. Because Petitioner was deemed inadmissible at the border when the NTA was issued, and he has applied for asylum, his detention is pursuant to 8 U.S.C. § 1225.

[2] An award of asylum has a discretionary element, whereas withholding of removal and CAT protection are mandatory if the elements of the test are met. The requirements for withholding of removal and CAT protection are higher than for asylum, but these forms of relief provide more limited benefits. Withholding of removal prohibits removal to a country where the applicant's life or freedom would be threatened based on status as a member of a protected group. Protection from removal based on the CAT requires the noncitizen to show they are in danger of torture if removed to the designated country. To be entitled to protection under the CAT, the noncitizen must show the feared harm meets the definition of "torture," i.e., an intentional unlawful infliction of severe physical or mental suffering or pain, with the consent of a public official, for purposes such as punishment, obtaining a confession, intimidation, or discrimination. The advantage of CAT protection is that with the exception of commission of a serious crime, none of the bars to asylum prevent a noncitizen from being granted this form of relief. Both withholding of removal and CAT protection do not prevent removal to a third country; however, the Ninth Circuit Court of Appeals has held that removal to a third country requires a noncitizen be provided with procedural due process prior to removal to that specific third country. *See Ibarra-Perez v. United States*, 154 F.4th 989, 995 (9th Cir. 2025). *See also Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, 793 F. Supp. 3d 19, 45-46 (D.D.C. 2025).

[Petitioner's] detention." (ECF No. 1-1 at 34).  Because "testimony was not completed," Petitioner's hearing was continued to June 25, 2025. (ECF No. 1-1 at 35). At the conclusion of the June hearing, the "IJ read his decision" denying asylum and withholding of removal "in court." (*Id.*).

In the order denying asylum and withholding of removal and denial of protection under the CAT, the IJ noted Petitioner was charged with being inadmissible pursuant to INA § 212(a)(7)(A)(i)(I), found Petitioner credible, and "found that [Petitioner] testified consistently with the record evidence." (ECF No. 1-1 at 35). The IJ denied Petitioner's applications for asylum, withholding of removal, and relief pursuant to the CAT. (ECF No. 1-1 at 2-15). The IJ ordered Petitioner be removed to Russia, "pursuant to the charge contained in the Notice to Appear." (ECF No. 1-1 at 14).

On July 23, 2025, Petitioner, through counsel, appealed the denial of asylum and relief from removal to the Board of Immigration Appeals ("BIA"), filing his brief on November 20, 2025. (ECF No. 1-1 at 17-53). In his appeal to the BIA Petitioner asserted:

> The Immigration Judge ("IJ") made several errors of law and fact that led him to conclude that the Respondent in this matter ("Mr. Savin") does not have a well-founded fear of future persecution in his native Russia despite the fact that he is currently being prosecuted under a politically motivated law, Art. 207.3 of the Russian criminal code, which is punishable by a decade in prison. This is also despite the fact that Mr. Savin was repeatedly threatened with prosecution and death by government official for his political beliefs and despite the fact that he suffered a severe beating resulting in concussion as a result of these beliefs. The IJ found Mr. Savin credible, and also admitted his supporting documentation including the actual summons demonstrating that a criminal case was initiated against Mr. Savin under Art. 207.3 and three exhibits of country conditions reports detailing the pervasive climate of political repression and persecution in Russia.
>
> The immigration judge reached this erroneous conclusion by: 1) applying an impossibly high, "knowledge" standard rather than the required "reasonable possibility" standard for the well-founded fear analysis; 2) making an incorrect legal assumption that Mr. Savin cannot establish political persecution for his political speech by virtue of his government position in Russia; 3) making a finding which is not supported by substantial evidence that Mr. Savin failed to establish the requisite nexus between his

political opinion and his feared persecution and that he feared persecution solely on account of criminal prosecution and evading military service; 4) By failing to consider any country conditions information in his analysis. Mr. Savin has met his burden to prove a well-founded fear of future persecution on account of his political opinion and asylum should be granted by the BIA for this reason.

Additionally, Mr. Savin established past persecution. The Immigration Judge's decision to the contrary was based on: 1) An erroneous application of "cumulative" harm analysis for past persecution in violation of law; and 2) failure to consider substantial fats of both cumulative harm persecution and single-incident persecution. Similarly, the immigration Judge's denial of Withholding of Removal and CAT relief are not based on substantial evidence and Mr. Savin has met his burden to prove eligibility for Withholding and CAT as well as asylum. It also appears that the Immigration Judge violated Mr. Savin's due process rights by failing to fairly consider the evidence in Mr. Savin's case, potentially because he indiscriminately applied the analysis Matter of E-Z despite the factual differences between E-Z and Mr. Savin due to his " risk adverse" outlook.

Since Mr. Savin was ordered removed, government officials from the Russian Federation have twice come to Mr. Savin's mother at his registered address, have stated that they know Mr. Savin has applied for asylum and lost his case and have asked when he will be coming back to Russia. These visits happened as recently as August and indicate that Mr. Savin is still being aggressively pursued by the Russian government for persecution. Proof of these interactions is attached to the instant brief as an addendum. It is not an exaggeration to say that reversal of the IJ decision by the Board is necessary to save Mr. Savin's life.

(ECF No. 1-1 at 24). Per the Executive Office of Immigration Review, the Department of Homeland Security did not file a brief in Petitioner's appeal. *See* https://acis.eoir.justice.gov/en/caseInformation, *last visited* Apr. 10, 2026.

In November of 2025 Petitioner was transferred to the San Luis Detention Center in Arizona. (ECF No. 1 at 19). There is nothing in the record indicating Petitioner has ever received a hearing to determine whether he would be a flight risk and/or a danger to the community if released from detention.

**II.     Claims for Relief**

Petitioner contends the length of his detention, without a determination as to whether he is a flight risk or a danger to the community, violates his right to due process.

(ECF No. 1 at 2, 5-7). Petitioner notes he used the CBP app to enter the United States and that he was inspected at the border, and emphasizes he has no criminal history and he has a sponsor in the United States. (ECF No. 1 at 19). Respondents summarily assert Petitioner is not subject to a final order of removal and, therefore, his detention is mandatory, citing 8 U.S.C. § 1225(b)(2)(A), and *Zadvydas v. Davis*, 533 U.S. 678 (2001), and *Jennings v. Rodriguez*, 583 U.S. 281 (2018). (ECF No. 12).

### III.   Analysis of Claims for Relief

The United States Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). The right to be free from physical restraint is "at the heart of the liberty" guaranteed by the Due Process Clause of the Fifth Amendment. *E.g.*, *Zadvydas*, 533 U.S. at 690. Although "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process," such detention must still comport with the detainee's right to due process. *Demore v. Kim*, 538 U.S. 510, 523 (2003). *See also Wong Wing v. United States*, 163 U.S. 228, 235-237 (1896).

There is no statutory requirement that a noncitizen detained under § 1225(b) be given a hearing regarding the continuation of their detention pending the finality of their removal proceedings. However, the federal courts have generally held that the Due Process Clause does not allow for indefinite detention of a noncitizen during the pendency of their removal proceedings without some type of individualized assessment. *See infra* at 7-9. In dissent in *Jennings v. Rodriguez*, 583 U.S. 281, 299-308 (2018), Justice Breyer eloquently argued the indefensibility of allowing prolonged, unconsidered detention of noncitizens:

> It is clear that the Fifth Amendment's protections extend to "all persons within the territory of the United States." ... But the Government suggests that those protections do not apply to asylum seekers or other arriving aliens because the law treats arriving aliens as if they had never entered the United States; hence they are not held within its territory.
> This last-mentioned statement is, of course, false. All of these noncitizens are held within the territory of the United States at an immigration detention facility. ... At most one might say that they are "constructively" held outside the United States: the word "constructive"

signaling that we indulge in a "legal fiction," shutting our eyes to the truth. But once we admit to uttering a legal fiction, we highlight, we do not answer, the relevant question: *Why* should we engage in this legal fiction here?

The legal answer to this question is clear. We cannot here engage in this legal fiction. No one can claim, nor since the time of slavery has anyone to my knowledge successfully claimed, that persons held within the United States are totally without constitutional protection. Whatever the fiction, would the Constitution leave the Government free to starve, beat, or lash those held within our boundaries? If not, then, whatever the fiction, how can the Constitution authorize the Government to imprison arbitrarily those who, whatever we might pretend, are in reality right here in the United States? The answer is that the Constitution does not authorize arbitrary detention. And the reason that is so is simple: Freedom from arbitrary detention is as ancient and important a right as any found within the Constitution's boundaries. *See Zadvydas*, *supra*, at 720-721 [] (Kennedy, J., dissenting) ("inadmissible aliens" who are "stopped at the border" are "entitled to be free from detention that is arbitrary or capricious").

583 U.S. at 331-32 (emphasis in original).

On remand from *Jennings*, the Ninth Circuit Court of Appeals found that the Supreme Court had chosen "to answer only the question whether the statutory text itself included a limit on prolonged detention or a requirement of individual bond hearings." *Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018).[3] Citing the United States Supreme Court's opinion in *United States v. Salerno*, 481 U.S. 739, 755 (1987), the Ninth Circuit stressed that "[a]rbitrary civil detention is not a feature of our American government," and

[3] The *Rodriguez* panel described the issue before the Supreme Court in *Jennings* as follows:
In *Jennings v. Rodriguez*[] 138 S. Ct. 830 [] (2018), the Supreme Court held that we misapplied the canon of constitutional avoidance to hold that certain immigration detention statutes, namely 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), implicitly contain a reasonableness determination after which due process concerns require that persons in prolonged mandatory detention are entitled to individualized bond hearings and possibly, conditional release. Although the Court sought and received briefing on the straightforward constitutional question, i.e. without the implicit requirement of due process for persons in arbitrary prolonged detention, whether these detention statutes are constitutional, it declined to reach the constitutional question. The Court instead chose to answer only the question whether the statutory text itself included a limit on prolonged detention or a requirement of individual bond hearings.
*Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018)

also expressed "grave doubts that any statute that allows for *arbitrary* prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Id.* at 256 (emphasis added).

Although 8 U.S.C. § 1225(b), the statute under which Petitioner is detained, provides that a noncitizen who is not under a final order of removal "shall" be detained pending the conclusion of their removal proceedings, the federal courts have repeatedly held that even statutorily-authorized detention of a noncitizen in removal proceedings must comport with due process, as evaluated by the federal courts pursuant to their power to award writs of habeas corpus. *See Boumediene v. Bush*, 553 U.S. 723, 797 (2008) (holding that habeas corpus applied to detainees who were classified as enemy combatants and stating "few exercises of judicial power are as legitimate or necessary as the responsibility to hear challenges to the authority of the Executive to imprison a person."), *cited in Chekhovskii v. Scott*, No. 2:25-cv-02550, 2026 WL 353265, at *3-4 (W.D. Wash. Feb. 9, 2026). The Ninth Circuit Court of Appeals has recognized that prolonged civil immigration detention without meaningful individualized safeguards raises serious constitutional concerns and warrants relief when detention becomes unreasonable as applied to a particular individual. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1142-44 (9th Cir. 2013); *Tijani v. Willis*, 430 F.3d 1241, 1247-49 (9th Cir. 2005).

A majority of the federal district courts that have considered the question have concluded that at some point prolonged detention under § 1225(b), without an individualized bond hearing, violates the detainee's right to due process. *See*, *e.g.*, *Rash v. LaRose*, ___ F. Supp. 3d ___, No. 26-cv-0008, 2026 WL 249324, at *3 (S.D. Cal. 2026); *Larrazabal-Gonzalez v. Mason*, ___ F. Supp. 3d ___, No. 26-cv-00049, 2026 WL 221706, at *5 (S.D.W. Va. 2026) ("The Constitution does not tolerate what would be plainly unlawful in the criminal context simply because the detention is labeled civil. Nor does the Constitution withhold its protections when a person is an immigrant."); *Sadeqi v. LaRose*, 809 F. Supp. 3d 1090, 1093 (S.D. Cal. 2025) ("This Court agrees with the majority position

that a petitioner detained under Section 1225(b)(1) may assert a due process challenge to prolonged mandatory detention without a bond hearing."); *Fils-Aime v. FCI Berlin, Warden*, 808 F. Supp. 3d 218, 224 (D.N.H. 2025); *Rashid v. Trump*, 807 F. Supp. 3d 349, 363 (D. Vt. 2025); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116-17 (W.D. Wash. 2019) ("prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process."); *Leonteva v. Noem*, No. 26-cv-00043, 2026 WL 711766, at *5 (S.D. Ind. Mar. 13, 2026); *Mashchenko v. Rokosky*, No. 25-cv-12387, 2026 WL 185204, at *3 (D.N.J. Jan. 25, 2026); *Rodriguez Chavez v. Holman*, No. 25-cv-00267, 2026 WL 136902, at *3 (W.D. Pa. Jan. 20, 2026); *Maksin v. Warden, Golden State Annex*, No. 25-cv-00955, 2025 WL 2879328, at *3 (E.D. Cal. Oct. 9, 2025); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 25-cv-00098, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025).

Absent the availability of § 2241 relief, in circumstances similar to Petitioner's the government could detain a noncitizen for an indeterminate period of time provided there was no final order of removal. This does not conform to the Constitution's guarantee of due process to individuals present in the United States of America. It is recommended that the Court join the federal District Courts that have concluded that prolonged mandatory detention pending the finality of removal proceedings, without a bond hearing, at some point violates the detainee's right to due process of law. *See Tavurov v. Noem*, ___ F. Supp. 3d ___, 2026 WL 323054, at *4 (W.D. Wash. Feb. 6, 2026); *Tenemasa-Lema v. Hyde*, 810 F. Supp. 3d 244, 256 n.18 (D. Mass. Nov. 25, 2025); *Gao v. LaRose*, 805 F. Supp. 3d 1006, 1100 (S.D. Cal. 2025); *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825-26 (W.D. Pa. 2025); *Leke v. Hott*, 521 F. Supp. 3d 597, 603 n.8 (E.D. Va. 2021);[4] *Mbalivoto v. Holt*, 527 F. Supp. 3d

---

[4] In support of this conclusion, in *Leke* the Eastern District of Virginia cites the following cases:

838, 851 (E.D. Va. 2020) ("[S]ome constitutionally adequate process must be provided; and the Court concludes, based on *Zadvydas*, *Demore*, and *Thuraissigiam*, that Petitioner is not foreclosed from the relief he seeks with respect to his detention either because he is an entering alien, as opposed to an entered alien, or because there remains a discernable statutory purpose for his detention."); *Kydyrali*, 499 F. Supp. 3d at 772; *Abdi v. Duke*, 280 F. Supp. 3d 373, 393 (W.D.N.Y. 2017) ("The majority of the courts in this Circuit that have considered the issue agree, and this Court finds their reasoning ... persuasive. Section 1225(b) does not permit the indefinite detention of individuals detained under that statute."); *Mashchenko*, 2026 WL 185204, at *3; *Baishymyrov v. Warden of Golden State Annex Det. Facility*, No. 25-cv-01658, 2026 WL 145644, at *6 (E.D. Cal. Jan. 20, 2026); *Sufiiarov v. Warden, Otay Mesa Det. Ctr.*, No. 25-cv-03265, 2026 WL 26079, at *3 (S.D. Cal. Jan. 5, 2026) ("The Court agrees with those courts that have found a noncitizen detained under § 1225(b) for a prolonged period without an individualized bond hearing may assert a constitutional right to due process."); *Abdul-Samed*, 2025 WL 2099343, at *6; *Arechiga v. Archambeault*, No. 23-cv-0600, 2023 WL 5207589, at *3 (D. Nev. Aug. 11, 2023); *Bermudez Paiz v. Decker*, No. 18-cv-4759, 2018 WL 6928794, at *10 (S.D.N.Y. Dec. 27, 2018) ("Most judges who have squarely faced the question have applied the same

---

*See also Kouadio v. Decker*, 352 F. Supp. 3d 235, 241 (S.D.N.Y. 2018) (34-month detention of arriving alien without bond hearing violates due process); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772, No. 3:20-cv-539 (S.D. Cal. 2020) (27-month detention of arriving alien without bond hearing violates due process); *Pierre v. Doll*, 350 F. Supp. 3d 327, 332 (M.D. Pa. 2018) (23-month detention of arriving alien without bond hearing violates due process); *Mbalivoto v. Holt*, No.1:20-cv-827 at 5 (Dkt. 22) (E.D. Va. Aug. 11, 2020) (22-month detention of arriving alien without bond hearing violates due process); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 859 (D. Minn. 2019) (19-month detention of arriving alien without bond hearing violates due process); *Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 442–43 (D. N.J. 2019) (same); *Djelassi v. ICE Field Office Dir.*, 434 F. Supp. 3d 917, 930 (W.D. Wash. 2020) (18-month detention of arriving alien without bond hearing violates due process); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1177 (W.D. Wash. 2019) (17-month detention of arriving alien without bond hearing violates due process); *Lett v. Decker*, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018) (10-month detention of arriving alien without bond hearing violates due process).

521 F. Supp. 3d at 603 n.8.

logic to § 1225(b), holding that arriving aliens, like criminal aliens, cannot be detained for an unreasonably prolonged period of time without a bond hearing."). *Contra Petgrave v. Aleman*, 529 F. Supp. 3d 665, 667 (S.D. Tex. 2021); *St. Charles v. Barr*, 514 F. Supp. 3d 570, 579 (W.D.N.Y. 2021); *Mendoza-Linares v. Garland*, No. 21-cv-1169, 2024 WL 3316306, at *2 (S.D. Cal. June 10, 2024).

The Ninth Circuit Court of Appeals has not provided the lower courts with guidance regarding the point at which an immigration detainee's prolonged detention under § 1225(b) without a bond hearing becomes unconstitutional. The District Courts within the Ninth Circuit's jurisdiction have generally found the test stated in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) applicable with regard to those detained pursuant to § 1225(b), *see, e.g., Prabhpreet v. Larose*, 26-cv-393, 2026 WL 310192, at *3 (S.D. Cal. Feb. 5, 2026), although some courts have instead applied the test stated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), *see, e.g., Tigranyan v. Warden of Cal. City Det.*, No. 25-cv-01554, 2026 WL 91765, at *5-7 (E.D. Cal. Jan. 13, 2026), which has often been applied in situations involving detention under § 1226(c). Under either test, Petitioner is entitled to a bond hearing to determine whether he would be a flight risk or a danger to the community if released from detention.

The *Banda* court considered the following six factors to determine whether continued detention under § 1225(b) without a bond hearing violated the detainee's due process rights:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

385 F. Supp. 3d at 1118, *citing Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019). *See also Sadeqi*, 809 F. Supp. 3d at 1094; *Kydyrali*, 499 F. Supp. 3d at 773-74; *Prabhpreet*, 2026 WL 310192, at *2-3; *Amado v. United States Dep't of Just.*, No.

25-cv-2687, 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025); *Kadir v. LaRose*, 25-cv-1045, 2025 WL 2932654, at *4 (S.D. Cal. Oct. 15, 2025).

With regard to the total length of detention to date, Petitioner has now been detained for seventeen months. Although the length of Petitioner's detention does not, by itself, establish prolonged detention in violation of due process, neither does that length of detention insulate Petitioner's case from constitutional review. The federal district courts have ordered a bond hearing where a petitioner was subject to mandatory detention for a shorter length of time. *See*, *e.g.*, *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) ("Petitioner has been in immigration detention ... approximately one year. District court have found shorter lengths of detention ... without a bond hearing to be unreasonable.") (collecting cases); *Amado*, 2025 WL 3079052, at *5 ("Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable.") (collecting cases); *Tonoyan v. Andrews*, No. 25-cv-00815, 2025 WL 3013684, at *4 (E.D. Cal. Oct. 28, 2025) ("Petitioner has been detained approximately 11 months. This period ... qualifies as prolonged."); *Gao*, 805 F. Supp. 3d at 1112 ("The Court finds that Petitioner's detention for over 10 months without a bond hearing, in the context of the specific circumstances described above, has become unreasonable and violates due process."). The Court may reasonably conclude that the first *Banda* factor weighs in favor of Petitioner.

The second *Banda* factor evaluates the potential duration of future detention. It will likely take a year for the BIA to reach a decision regarding the IJ's denial of asylum and, should Petitioner exercise his right to appeal any negative decision by the BIA to the Ninth Circuit Court of Appeals, a decision from the appellate court could take up to two years. *See Banda*, 385 F. Supp. 3d at 1119 (finding this factor weighed in the petitioner's favor where a petitioner who had "only recently" appealed the IJ's denial of his case to the BIA faced a process that could "take up to two years or longer"); *Barraza v. ICE Field Off. Dir.*, No. 23-cv-1271, 2023 WL 9600946, at *6 (W.D. Wash. Dec. 8, 2023), *report and recommendation adopted*, 2024 WL 518945 (W.D. Wash. Feb. 9, 2024) (citing the Ninth

Circuit Court of Appeals website's timeline for appeals and noting a petitioner who filed their petition for review in the Ninth Circuit a few months prior could be facing two years or more of additional time in custody);[5] *Hong v. Mayorkas*, No. 20-cv-1784, 2021 WL 8016749, at *4 (W.D. Wash., June 8, 2021) (finding this factor favored the petitioner because they faced "an additional 15 to 38 months" in detention where they were at the "earliest stages" of pursuing a petition for review before the Ninth Circuit Court of Appeals). Under the government's theory of mandatory detention pending finality of an order of removal, and given the current flood of cases before the BIA and the appellate courts, Petitioner might potentially be detained for an additional one or two years pending the final outcome of his removal proceedings. Therefore, the second *Banda* factor also weighs in favor of Petitioner.

The third factor to be considered examines the conditions of detention. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger the argument that [the noncitizen] is entitled to a bond hearing." *Barraza*, 2023 WL 9600946, at *6 (internal quotations omitted). Petitioner is detained at the San Luis Regional Detention Center, which houses both immigration detainees and criminally-sentenced individuals. The conditions under which Petitioner is detained closely resemble penal confinement. Petitioner is not able to come and go from the detention center. Visitation is limited, the specific times that visitors are allowed are "subject to change," and visitors are searched. Inmate mail is screened. The detention center determines when Petitioner is able to exercise, what he may eat, and what belongings he may possess. The Court may reasonably conclude that the third *Banda* factor weighs in favor of Petitioner.

The fourth and fifth *Banda* factors examine the delays in the removal proceedings caused by the detainee and delays in the removal proceedings caused by the government. There is no evidence that Petitioner has engaged in any delay of his proceedings other than

[5] At this time the Ninth Circuit advises that a civil appeal can take six to twelve months from the date the notice of appeal is docketed to being set for oral argument, with another three months to a year before a decision is issued, or four months from the time an appeal is fully briefed until a decision is made if oral argument is not ordered. *See* https://www.ca9.uscourts.gov/general/faq, *last visited* Apr. 19, 2026.

by appealing the IJ's denial of asylum and withholding of relief from removal to the BIA, which he has a right to do. A review of Petitioner's counseled brief to the BIA (ECF No. 1-1 at 17-53) reveals legitimate bases for relief from the IJ's order. There is no indication that the government has caused any delay in Petitioner's proceedings. However, it is noted that the government did not file a brief in Petitioner's appeal to the BIA and, accordingly, the government appears to cede Petitioner's allegations of error in the IJ's decision.

The sixth prong of the *Banda* test considers the likelihood that Petitioner's removal proceedings will result in a final order of removal. In considering the "likelihood that the removal proceedings will result in a final order of removal," the court considers "whether the noncitizen has asserted any defenses to removal." *Banda*, 385 F. Supp. at 1120 (citations omitted). Where the petitioner has asserted a good faith challenge to removal, "the categorical nature of the detention will become increasingly unreasonable." *Id.* (internal quotations omitted), *cited in Kadir*, 2025 WL 2932654, at *5. Petitioner has asserted a good faith challenge to the order of removal and the denial of relief from removal. It is entirely possible that Petitioner will be awarded relief from removal. A close reading of Petitioner's brief to the BIA, which the government has not challenged, indicates Petitioner has met the requirements for a grant of asylum or withholding of removal, and that the IJ's decision was not without procedural and legal error. This factor weighs in favor of Petitioner.

Notably, one of the *Matthews* factors is consideration of "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement," i.e., a bond hearing, "would entail." 424 U.S. at 335. The government's interest in Petitioner's detention is to ensure that Petitioner appears for all of his immigration proceedings, i.e., that he is not a flight risk, and that he is not a danger to the community. Petitioner has not committed any crime, faces no charges, and did not attempt to avoid inspection when he appeared at a port of entry. Petitioner appeared for inspection with the hope of admission and the express acquiescence of the government via the CBP process. Petitioner has a wife, and a child he has never seen, who are legally

present in the United States, and it is unlikely he would jeopardize an opportunity to be with them by failing to appear at his scheduled removal proceedings or by committing any crime. Petitioner and his family have a sponsor who will ensure that the family does not become an economic burden on the state.

Having determined that a bond hearing is required, the question of who bears the burden of proof at a bond hearing in the context of § 1225(b) detention should be answered. This is not a question clearly resolved by the federal courts at this time. The Supreme Court has stressed that "due process is flexible" and "calls for such procedural protections as the particular situation demands." *Jennings*, 583 U.S. at 314, 138.

Some district courts within the Ninth Circuit have concluded that at bond hearings involving those detained for a prolonged period of time pursuant to § 1225(b), without an individualized finding of whether they should be released on bond pending the finality of their removal proceedings, the government bears the burden of establishing the detainee should not be released on bond because they are a flight risk and/or a danger to the community. *See Gao*, 805 F. Supp. 3d at 1112; *Chenghong Xie v. Larose*, No. 3:26-cv-01116, 2026 WL 836351, at *2 (S.D. Cal. Mar. 26, 2026); *Sadeqi*, 809 F. Supp. 3d at X; *Kadir*, 2025 WL 2932654, at *6; *Idiev v. Warden of the Golden State Annex Det. Facility*, No. 25-cv-01030, 2025 WL 3089349, at *6 (E.D. Cal. Nov. 5, 2025) (ordering bond hearing where "the government must justify Petitioner's continued confinement under § 1225(b) by clear and convincing evidence that Petitioner is a flight risk or a danger to the community"). The Court could, therefore join these courts, and apply the "general principles of procedural due process," and place the burden of establishing the elements warranting detention on the government rather than requiring Petitioner to prove those elements in the negative. *See Fils-Aime*, 808 F. Supp. 3d at 224; *Sandesh v. LaRose*, No. 26-cv-0846, 2026 WL 622690, at *5 (S.D. Cal. Mar. 5, 2026), *citing*, *e.g.*, *Banda*, 385 F. Supp. 3d at 1120; *Belqasim v. Bostock*, No. 25-cv-01282, 2025 WL 3466971, at *10 (W.D. Wash. Oct. 28, 2025), *report and recommendation adopted*, 2025 WL 3170929 (Nov. 13, 2025). *See also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 n.4 (Wardlaw, J.,

dissenting, discussing the equities of placing the burden on the government in the context of detention under § 1226); *Gao*, 805 F. Supp. 3d at 1112; *A.E. v. Andrews*, No. 25-cv-00107, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) (recommending that "Respondent be ordered to provide Petitioner with a bond hearing before an immigration judge at which Respondent must justify Petitioner's continued detention by clear and convincing evidence," in the context of detention pursuant to § 1225(b) which the court found had become unreasonably prolonged). The Court could also order that in the event Petitioner is determined to not be a danger to the community and to not be a flight risk, the IJ must consider Petitioner's financial circumstances or alternative conditions of release when determining any bond. *See Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017) ("Plaintiffs are likely to succeed on their challenge under the Due Process Clause to the government's policy of allowing ICE and IJs to set immigration bond amounts without considering the detainees' financial circumstances or alternative conditions of release."); *Black v. Decker*, 103 F.4th 133, 138 (2d Cir. 2024) (The district court "correctly directed the immigration judge ("IJ"), in setting his bond and establishing appropriate terms for his potential release, to consider his ability to pay and alternative means of assuring appearance.").

## IV.    Conclusion

Petitioner's detention for seventeen months without a bond hearing, under the circumstances and equities of this case, has become unreasonable and violates Petitioner's Fifth Amendment right to due process of law. Petitioner is entitled to a prompt and individualized bond hearing, at which Respondents bear the burden of justifying his continued detention by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released.

Accordingly,

**IT IS RECOMMENDED that** the petition for habeas relief pursuant to § 2241 (ECF No. 1) be **granted**, and the Court order that within seven (7) days of the date the petition is granted Petitioner be given a bond hearing before a neutral adjudicator at which

hearing the government must bear the burden of showing that Petitioner should not be released on bond because he is a flight risk and a danger to the community.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. Rule 72(b), Federal Rules of Civil Procedure, provides that the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Pursuant to Rule 7.2(e)(3) of the Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed ten (10) pages in length. Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. *See United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 10th day of April, 2026.

Camille D. Bibles
United States Magistrate Judge